**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

PAUL CIPRIANI,

                              Plaintiff,

                    v.                                                No. 06-CV-889
                                                                          (GTS/DRH)

HARRY C. BUFFARDI; SCHENECTADY
COUNTY; MR. BURNS; MR. JONES; MR.
ADAMS; MS. JONES; MS. HULL; LORAINE
WALKER; W. KENT, Correctional Officer;
and MR. DIGIOACCHINO, Correctional
Officer,

                              Defendants..
_____

**APPEARANCES:**                                     **OF COUNSEL:**

PAUL CIPRIANI
06-A-0678
Washington Correctional Facility
Post Office Box 180
72 Lock 11 Lane
Comstock, New York 12821

GOLDBERG SEGALLA LLP                    JONATHAN M. BERNSTEIN, ESQ.
Attorneys for individual defendants          WILLIAM J. GREAGAN, ESQ.
8 Southwoods Boulevard
Suite 300
Albany, New York 12211

BURKE, SCOLAMIERO,                          PETER M. SCOLAMIERO, ESQ.
MORTATI, & HURD, LLP                          GERALD D. D'AMELIA, JR., ESQ.
Attorneys for defendant Schenectady
  County
302 Washington Avenue Extension
Post Office Box 15085
Albany, New York 12212-5085

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

Plaintiff pro se Paul Cipriani ("Cipriani") is presently incarcerated in the custody of the New York State Department of Correctional Services and was formerly incarcerated in the Schenectady County Correctional Facility (SCCF).  Cirpiani brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, nine Schenectady County employees and the County itself, violated his constitutional rights under the Eighth and Fourteenth Amendments while he was incarcerated at the SCCF.  Second Am. Compl. (Docket No. 126).  Presently pending are the motions of the individual defendants and the County and Schenectady County for summary judgment pursuant to Fed. R. Civ. P. 56.  Docket Nos. 133, 140, 147, 155.  Cipriani opposes the motions.  Docket Nos. 145, 152, 154, 157.  For the following reasons, it is recommended that defendants' motions be granted in part and denied in part.

**I. Background**

The facts are related herein in the light most favorable to Cipriani as the non-moving party.  See subsection II(A) infra.  Cipriani was held at SCCF in pretrial detention from February 2005 to February 2006 when he was transferred to state custody to serve a total sentence of three to six years imprisonment for conviction of burglary and related offenses.  See People v. Cipriani, 45 SA.D.3d 967 (3d Dep't 2007).  Cipriani's four causes of action concern events occurring at SCCF on April 6, June 26, August 18, and December 6, 2005.

---

[1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

**A. April 6, 2005**

On April 6, 2006, while working in the kitchen, Cipriani was instructed by defendant Kent, a corrections officer, to enter the back of a delivery truck and assist the driver with unloading.  Second Am. Compl., IV, First Claim, (15); Cipriani Dep. (Docket No. 133-3) at 26-28, 30.  When Cipriani boarded the truck, the driver was operating a palette jack which had one of the palettes partially elevated and was attempting to move it to the opening at the rear of the truck.  Cipriani Dep. at 28.  After climbing into the truck and prior to assisting the driver, Cipriani bent down to tie his shoe.  id. at 28.  While bent down, the palette dropped from the jack and rolled backwards toward Cipriani.  Id. at 28, 35.  The palette struck Cipriani in his left side, injuring his hand, arm, shoulder, and torso.  Id. at 28, 37-38.[2]

Cipriani requested medical attention.  Cipriani Dep. at 53.  Cipriani was instructed to return to his bunk and rest.  Id. at 54.  That night, Cipriani awoke to searing pain in his left side.  Id. at 54-55.  He reported to his work assignment that morning, requested a medical pass, and was instructed to attempt light duty dishwashing.  Id. at 55.  When dishwashing proved too difficult, Cipriani was ordered back to his bunk where a corrections officer observed his condition and sent him to the medical department.  Id. at 55-56.

The following day, Cipriani was sent for x-rays and treatment.  Cirpriani Dep. at 56; Med. Records (Docket No. 133-10, Ex. F)[3] at 11, 12, 36.  Cipriani complained of pain,

---

[2] In conjunction with this incident, Cipriani alleges that defendant Walker was irresponsibly discussing Cipriani's confidential medical condition in the mess hall for all to hear.  Second Am. Compl., IV, Third Claim (8); see also Colon Aff. (Docket No. 126 at 33)

[3] Defendants filed Cipriani's medical records under seal.  Docket No. 133-10, Ex. F. Cipriani has received copies of the medical records.  Med. Records at 74. Cipriani has also made his medical condition and treatment issues in this case.  Therefore, the records will be discussed and referenced herein.  The pages of the records were not consecutively

difficulty lifting his arm, and swelling.  Med. Records at 11.  The x-rays of Cipriani's shoulder and hand were unremarkable.  Id. at 12, 36; Cipriani Dep. at 63.  Cipriani was also prescribed pain medication.  Med. Records at 36, 38, 40 (recording provision of Tylenol (from April 25 to May 4, 2005) and Motrin (from April 7 to April 24, 2005) for pain relief).

On April 8, 2005, Cipriani noticed a bump on the left side of his chest.  Ciprani Dep. at 58-59; Med. Records at 57.  Cipriani was evaluated on April 10, 2005, with medical staff noting thumb soreness and tingling and a lump on his left rib cage the size of a half-dollar.  Med. Records at 57.  Cipriani again requested treatment on April 12, 2005 for his injuries and was seen by medical staff the next day.  Id. at 10, 58.  Cipriani reported pain in his shoulder upon palpation, but the shoulder retained a good range of motion.  Id. at 10.  Cipriani's left hand was still swollen but also had good grip strength.  Id.  Cipriani was limited to light duty work for the following week.  uid. at 10, 88.

On April 17, 2005, Cipriani again requested treatment because his pain medication was not alleviating his pain through the night.  Med. Records at 59.  The following day Cipriani was prescribed pain relievers.  Id. at 35.  The mass on Cirpirani's chest was diagnosed as a probably a lipoma[4] which would be observed and re-evaluated if they became worse or Cipriani experienced a change in symptoms.  Id. at 59.

On April 24, 2005, Cipriani again requested treatment complaining of constant pain in his shoulder, neck, upper back, and chest that was still affecting his sleep.  Med. Records

---

numbered, so page references are to manual pagination.

[4] A lipoma is a "[s]oft, movable, subcutaneous nodule with normal overlying skin," which normally are asymptomatic and do not require any kind of treatment.  THE MERCK MANUAL 840 (17th ed. 1999) (hereinafter "MERCK").  Occasionally, "pain may occur," and the lipoma can be surgically removed.  Id.

at 61.  The following day, medical staff increased the amount of Tylenol Cipriani was

prescribed.  Id.  On April 27, 2005, and again on May 2, 2005, Cipriani complained that the

lump on his chest was enlarging and more painful and that the current pain medication

provided inadequate relief and upset his stomach.  Id. at 62-63; Cipriani Dep. at 63-64.  On

May 3, 2005, Cipriani was examined, the lump was diagnosed as a possible cyst and noted

to have no signs or symptoms of infection.  Med. Records at 63.  Cipriani was re-evaluated

three days later.  Id. at 10.  His left shoulder was still showing good range of motion and

Cipriani was given range-of-motion exercises and pain relievers.  Id.  The lump was

categorized as a possible cyst,[5] but because it was enlarging, Cipriani was referred to a

surgeon to have the mass excised.  Id. at 10, 29, 35.

During May and June, Cipriani requested treatment four more times for the lump on

his chest.  Med. Records 64-68.  On May 23, 2005, medical staff attempted to drain the

cyst, but no fluid could be removed.  Id. at 66; Cipriani Dep. at 60; Docket No. 145-2 at 27.

The physician concluded that, while the lump did "not quite have a consistency of an

obvious lipoma, . . . it is still the leading most likely diagnosis."  Docket No. 145-2 at 27.  An

excision was conclusively recommended since the mass was enlarging and the procedure

was medically reasonably.  Id.  On May 31, 2005, Cipriani was still scheduled to have the

lump removed and until the excision occurred, the lump remained stable without sign of

infection.  Med. Records at 66.  In this period, Cipriani was scheduled for surgery,

transported to a medical center, and then returned to SCCF without receiving any medical

treatment.  Cipriani Dep. at 60-61; Med. Records at 68.

---

[5] Cysts are "slow-growing benign [masses which are] . . . firm, globular, movable, and nontender; it seldom causes discomfort unless infected."  MERCK 816.

On June 21, 2005, Cipriani again requested treatment complaining of immense pain and shortness of breath and seeking to know why his excision surgery had been cancelled. Med. Records at 68.  The following day, Cipriani was advised that medical staff were unable to articulate why the surgery had been cancelled.  Id.  The surgical appointment date was scheduled for July 1, 2005.  Id. at 25.

On July 1, 2005 a 4.5 cm lipoma was excised from Cipriani's chest.  Med. Records at 30; Docket No. 145-2 at 28.  The wound was bandaged, wound care instructions were given, and Cipriani was given pain medication and instructed to follow-up in a few weeks. Id. at 30, 31.  On July 4, Cipriani sought treatment to determine the proper care for his wound.  Id. at 70.  The following day the wound was healing well and there was no discharge or redness.  Id.  Cipriani requested medical attention for wound care and pain relief a few days later.  Id. at 71.  On July 13, 2005, examination revealed that Cipriani was not in acute distress and the excision site still had no signs of infection.  Id. at 71. Cipriani was educated on the signs of infection.  Id.

On July 17, 2005, Cipriani again requested additional or different pain medication for his back.  Med. Records at 72.  The following day, medical staff provided Cirpirani with a back sheet and pain medication.  Id. at 72.  On September 28, 2005, Cipriani began complaining of recurrent back and shoulder pain.  Id. at 81.  The following day he was given pain relievers.  Id.  Cipriani continued to complain of left side and lower back pain on October 27, 2005.  Id. at 8, 34.  The pain was consistent with the surgical site from the lipoma excision.  Id. at 8.  The pain had worsened after surgery but had progressively lessened since.  Id.  Cipriani was prescribed a different pain medication, instructed to continue taking the pain relievers, and taught gentle stretching to loosen the musculature

6

around the surgical area.  Id.

## B. June 26, 2005

While climbing stairs, Cipriani fell backwards down the stairs after being pushed by another inmate, Trae, who was running down the stairs, and that the fall could have been prevented had the corrections officer on duty, defendant Hull, prevented Trae from running. Cipriani Dep. at 67, 72-78; Med. Records at 69.  Cipriani was brought to the medical department in a wheel.  Med. Records at 9; see also Cipriani Dep. at 68  Cipriani complained of chest pain.  Id. at 9.  He was given pain relievers and a further examination was scheduled.  Id.  Cipriani spent approximately three days in bed, without medical attention.  Cipriani Dep. at 86.  At the followup examination on June 28, 2005, bruising was observed.  Med. Records at 69.  Cipriani was prescribed pain medication.  Id.  Cipriani's back injury required him to wear a brace for support.[6]  Cipriani Dep. at 87-88.

On June 29, 2005, Cipriani was taken for a court appearance.  Cipriani Dep. at 92. Upon arrival, Cipriani was placed "on the floor in a holding tank calling for help" when he experienced intense pain and difficulty breathing.  Second Am. Compl., IV, Second Claim (9); see also Cipriani Dep. at 93.  The officer who responded to Cipriani, defendant DiGioacchino, refused any medical attention.  Cipriani Dep. at 94, 97-98.  Cipriani received pain medication on June 29, 2005.  Med. Records at 42, 97.

---

[6] The back brace was issued after Cipriani injured himself while lifting heavy objects when he was working on the Franklin Correctional Facility ("Franklin") grounds.  Cipriani Dep. at 88.  Radiology reports from August 7, 2006, show "minimal degenerative change[s in Cipriani's back which were] essentially within normal limits for . . . [his] age."  Docket No. 145-2 at 25.

Upon his return to SCCF, Cipriani requested treatment claiming that he did not receive any pain medication prior, during, or subsequent to his trip to the court house.  Med. Records at 60.  Cipriani was issued a misbehavior report and taken to keeplock[7] upon his return.  Cipriani Dep. at 93-94.  While in keeplock, the absence of ventilation and flooding created an uninhabitable condition.  Id. at 100, 108; Docket No. 145.

### C. August 18, 2005

On August 18, 2005, Cipriani requested medical attention after being hit in the eye with a roll of toilet paper thrown by DiGioacchino.[8]  Med. Records at 75; Cipriani Dep. at 101.  Cipriani complained of pain and blurred vision.  Med. Records at 75; Cipriani Dep. at 104; Second Am. Compl., IV, Third Claim, (2).  DiGioacchino refused assistance, laughing and telling Cipriani that he would be fine.  Cipriani Dep. at 102-103; Second Am. Compl., IV, Third Claim, (2).  Cipriani continued to request medical attention for his eye, stating that the condition had worsened, his eye was excreting mucus and was bloodshot, and he required antibiotics.  Med. Records at 76-77.  The corrections officer, defendant S. Jones, denied Cipriani a medical pass to obtain treatment because there was no record of the incident in the facility log book.  Cipriani Dep. at 111-12.  Cipriani was evaluated on August

---

[7]"Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities."  Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. Comp. Codes R. & Regs. tit. 7, § 301.6.

[8] DiGiacchino was responsible for delivering rolls of toilet paper to inmates. DiGioacchino was allegedly asking the inmates who required toilet paper and then throwing the rolls to those inmates in need as a quarterback would throw a pass to a receiver.  Cipriani Dep. at 104-107; see also DiGioacchino Aff. (Docket No. 133-9) ¶¶ 2-4 (explaining how he would toss rolls of toilet paper to inmates who indicated they needed replacements).

23, 2005.  Med. Records at 27, 76.  No signs of infection, white matter, orbital tenderness, or injury were observed.  Med. Records at 76.  However, Cipriani was given antibiotic eye drops and was referred to an opthamalogist for evaluation.  Id. at 27, 76.

On September 16, 2005, Cipriani was again evaluated, no signs of infection were found in his eye, and he was told that he would be referred to an eye doctor.[9]  Med. Records at 8.  On September 28, 2005, Cipriani requested to see an eye doctor because the antibiotic drops badly burned his eyes and could not be used.  Id. at 78.  However, Cipriani also reported that the pain and mucus excretions had resolved.  Id.  On August 30, 2005, Cipriani was informed that he was scheduled to see an eye doctor and he was prescribed tylenol.  Id. at 79.

In September 2005, Cipriani made two more requests to see an eye doctor.  Med. Records at 79-80.  The medical department responded to the first request, instructing Cipriani that he was still scheduled for an appointment and that, in the interim, they would attempt to keep him comfortable.  Id. at 79.  On September 16, 2005, Cipriani was again seen by medical staff and on October 11, 2005, Cipriani was evaluated by an opthamologist.  Id. at 28.  No retinal damage was found and glasses were prescribed.  Id.[10]

Cipriani attempted to submit grievances regarding these events but was never

_____

[9] In his response papers, Cipriani also contends that the machines used to evaluate him were dirty and incapable of determining his condition.  Docket No. 145 ¶ 25(a).  Additionally, he proffers that because all doctors are not eye experts, he was unable to receive adequate treatment until seen by a specialist.  Id.  ¶ 25(b).

[10] More recently, Cipriani was seen on April 14 and April 30, 2008 for complaints of visual distortions.  Docket No. 145-2 at 11-12, 14.  Cipriani's condition remained stable, but fluid may have accumulated on his macula and a referral to a retinal specialist was suggested.  Id.

provided with the grievance forms despite repeated requests.  Second Am. Compl., Third

Claim, (7).  Cipriani finally wrote to the New York State Commission of Corrections about

his inability to obtain grievance forms and the Commission sent him forms.  Cipriani Dep. at

133.  Cipriani then filed the grievance forms with the Sheriff.  Id. at 133-34; see also Elwell

Aff. (Docket No. 133-6) ¶¶ 3-5 (explaining the grievance policy; Docket No. 133-7 (inmate

rules and regulations handbook).


### D. December 6, 2005

On December 6, 2005, Cipriani was involved in an altercation with another inmate

named Dingle.  Med. Records at 89; Cipriani Dep. at 120.  Cipriani and Dingle exchanged

words, Dingle struck him in the back of the head and began attempting to punch him, and

when Dingle charged at him, Cipriani punched Dingle in the face in self-defense.  Cipriani

Dep. at 118-20, 123.  A corrections employee witnessed the second half of the altercation.

Docket No. 133-11 at 8.  After Dingle was hit, the employee instructed Cipriani that a

response team was coming and that he should get down on the ground and be cooperative.

Cipriani Dep. at 123-24; Docket No. 133-11 at 8.  Officers arrived and, while handcuffing

Cipriani, twisted his hand severely.  Cipriani Dep. at 124-25.  Cipriani was issued a

misbehavior report for engaging in the altercation.  Id. at 127; Docket No. 133-11 at 9.

Cipriani requested, and was precluded from, filing criminal charges against Dingle.  Second

Am. Compl. IV, Fourth Claim, (3),(9).

On December 9, 2005, Cipriani attended his disciplinary hearing.  Cipriani Dep. at

128.  Defendant Adams presided over the hearing.  Id.  During the hearing, Cipriani

"admitted that he fought with [Dingle]."  Adams Aff. (Docket No. 133-11) ¶ 3.   No witnesses

10

were called at the hearing by Cipriani.  Cipriani Dep. at 128-130.  However, documents

Cipriani signed during the hearing indicate that he did not request any witnesses and that

he admitted to engaging in an altercation with Dingle.  Adams Aff. ¶ 4; Docket No. 133-11 at

7.  Cipriani was found guilty and sentenced to sixty days in the Special Housing Unit

(SHU).[11]  Docket No. 133-11 at 5, 7.  Cipriani unsuccessfully appealed the findings from the

hearing.  Cipriani Dep. at 131-33; Burns Aff. (Docket No. 133-13) ¶ 5; Docket No. 133-13 at

4.

The fight left Cipriani bruised, bloodied, and with a headache and ringing in his ears.

Med. Records at 89.  On December 15, 2005, Cipriani complained that his left finger might

be broken, but was eventually diagnosed as swollen and bruised.  Id. at 90  On January 3,

2006 Cipriani requested a doctor's appointment about the finger.  Id.  On January 5, 2006,

Cipriani was examined by medical staff.  Med. Records at 7, 33.  He complained of pain in

his left middle finger, stating it was probably a re-injury from eight months prior when a

corrections officer had severely injured his fingers while improperly handcuffing him.  id. at

7, 33.  Cipriani was given pain relievers, declined a splint, and underwent x-rays.  Id. at 7,

33, 13, 14.  The x-ray showed a "possible avulsion injury . . . of the 3rd finger of

indeterminate age."  Id. at 13, 14.

On January 9, 2006, Cipriani requested the results of his x-rays.  Med. Records at

92, 93.  The following day, Cipriani was read the x-rays, voiced no complaints, would

---

[11]SHUs generally "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

continue to take the pain medication, and would wear a splint for the next four-to-six weeks. Id. at 7, 33.  On January 22, 2006, Cipriani requested a new splint for his finger.  Id. at 94. The splint was made and applied the following day.  Id. at 94.

## II.  Discussion

Liberally construing Cipriani's second amended complaint, he contends that SCCF's law library was inadequate in violation of the First Amendment, defendants violated his Eighth Amendment rights when they were deliberately indifferent to his serious medical needs on multiple occasions and failed to protect him from the inmate that allegedly collided with him on the stairs.  Liberally construing the complaint, Cipriani also alleges Eighth Amendment he was subjected to inhumane conditions of confinement and excessive force when he was being handcuffed[12] in violation of the Eighth Amendment, defendants breached his right to privacy when medical staff discussed his medical ailments in the SCCF cafeteria,[13] and defendants infringed his Fourteenth Amendment rights when they

---

[12] To the extent that Cipriani has alleged an Eighth Amendment excessive force violation, he has failed to identify the individuals.  Without such proof, Cipriani cannot sustain a constitutional claim.  See Bourdon v. Loughren, 386 F.3d 88, 92 (2d Cir. 2004). Defendants' motion as to this claim should, therefore, be granted.

[13] Cipriani asserts these claim under the Health Insurance Portability and Accountability Act (HIPPA) which authorized a monetary remedy for the wrongful disclosure of medical information.  42 U.S.C. § 1320d-6.  However, HIPAA "does not confer a private cause of action . . . [or] either explicitly or implicitly, confer to private individuals a right of enforcement."  Barnes v. Glennon, No. 9:05-CV-0153 (LEK/RFT), 2006 WL 2811821, at *5 (N.D.N.Y. Sept. 28, 2006) (citations omitted).  Furthermore, "HIPAA provides for no federal cause of action; instead, HIPAA provides for an enforcement mechanism for the Secretary of Health and Human Services [HHS]."  Id. at *6 (internal quotation marks and citations omitted).  Therefore, Cipriani cannot maintain his HIPAA claim since there is no private cause of action granted by the statute.  Cipriani's only recourse through this statute is to request the State of New York or the Secretary of

failed to provide him with grievance forms and denied him his rights at the disciplinary hearing.

Defendants seek judgment for Cipriani's failure to exhaust his administrative remedies, to prove any individual was personally involved in any constitutional deprivation, to raise a question of fact on the merits of his claims, and on the ground of qualified immunity.


## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith

_____

HHS to bring the action on his behalf.  Accordingly, defendants' motion as to this claim should be granted.

Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.'" (citations omitted))..  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.


**B. Exhaustion**

As a threshold matter, defendants contend that Cipriani has failed to exhaust his administrative remedies.  Under 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies prior to bringing any suits challenging prison conditions, including federal civil rights cases.  Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 126 S. Ct. 2378, 2382-83 (2006).  This exhaustion requirement applies to all prison condition claims.  Porter, 534 U.S. at 532.  "[A]ny deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement."

Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999). The exhaustion requirement also applies even if the administrative grievance process does not provide for all the relief requested by the inmate.  Nussle, 534 U.S. at 524.

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply."  Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004)).  Exhaustion is generally achieved through the IGP.  See N.Y.Comp. Codes R. & Regs. tit. 7, § 701.1 et seq. (2001); see also note 8 supra.  However, when inmates fail to follow the IGP, a court must conduct a three-part inquiry to determine if such failure is fatal to their claims.  A court must consider whether

> (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

Ruggiero, 467 F.3d at 175 (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).

Administrative remedies are unavailable when there is no "possibility of [] relief for the action complained of."  Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004) (citing Booth v. Churner, 532 U.S. 731, 738 (2001)).  The test to determine the availability of an administrative remedy is an objective one asking whether "a similarly situated individual of ordinary firmness" would have deemed it accessible.  Id. at 688.  Courts have found unavailability "where plaintiff is unaware of the grievance procedures or did not understand it or where defendants' behavior prevents plaintiff from seeking administrative remedies."  Hargrove v. Riley, No. CV-04-4587 (DST), 2007 WL 389003, at *8 (E.D.N.Y. 2007) (internal

15

citations omitted).

The SCCF maintained a three-step procedure for inmates to file grievances concerning the conditions of their confinement.  Elwell Affirm. (Docket No. 133-6) at ¶ 4; SCCF Rules & Regs. (Docket No. 133-7) at 12-13[14] (handbook given to inmates upon admission).  First, an inmate must file a grievance with the Grievance Sergeant.  If dissatisfied with the Sergeant['s determination, an inmate may then appeal to a Major.  If still dissatisfied, an inmate may then appeal to the state Commission on Correction.  Elwell Affirm. at ¶ 4; SCCF Rules and Regs. at 12-13.  The procedure required that a grievance be filed in writing on a particular form to be providied to an inmate by the Grievance Sergeant upon request of the inmate.  SCCF Rules & Regs. at 12.  The handbook further advises that the stated procedures "are to be strictly adhered to by the inmate grievant and the department."  Id.

Viewing the facts in the light most favorable to Cipriani, defendants' failure to provide Cirpriani with grievance forms, if proven, would constitute behavior excusing Cipriani's failure to exhaust.  See Second Am. Compl., IV, First Claim, (7).  Cipriani asserts that defendants actions in failing to provide him the grievance forms, "which w[ere] always denied . . . for reasons unknown[, would have] . . . enabled the plaintiff to protect himself from the on going acts of inhumane, cruel and unusual punishment . . . ."  Id.  The necessity for Cipriani to file his grievance on the form maintained by SCCF is underscored by the

---

[14]The SCCF Rules & Regs. handbook was filed in a format which has two pages of the handbook on each page filed.  Thus, for example, the procedures for grievances are found on pages 16 and 17 of the handbook, which are filed in the docket as pages 12 and 13 of the filing.  The page references in citations are to the docket pages and not the handbook pages.

SCCF inmate handbook.  <u>See</u> SCCF Rules & Regs. at 12.  Thus, Cipriani was well aware of the SCCF grievance program, but, if proven, defendants' failure to provide the necessary form when requested by Cipriani prevented compliance with the procedures.  <u>Id.</u> Repearted failures by defendants to provide the form to Cipriani would deter a similarly situated individual from attempting to pursue a grievance.

This question of fact whether defendants failed to provide Cipriani with the requested form suffices to defeat defendants' motions on this ground.  Accordingly, defendants' motions on this ground should be denied.


**C. Personal Involvement**

Defendants contend that Cipriani has failed to establish the personal involvement of any individual defendant.  "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (quoting <u>Moffitt v. Town of Brookfield</u>, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority.  <u>Id.</u>; <u>Black v. Coughlin</u>, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
>  (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

17

> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

### 1. Buffardi

Harry C. Buffardi ("Buffardi") was the Schenectady County Sheriff during the period of Cipriani's detention at the SCCF.  Burrardi's responsibilities included management and operation of the SCCF.  Cipriani does not contend that Buffardi was directly involved in any of the alleged constitutional violations.  Cipriani also states that he never personally complained to Buffardi.  Cipriani Dep. at 138.  Cipriani's only claims are that, as Sheriff, Buffardi should have been aware of the unconstitutional actions occurring.  Second Am. Compl. IV, First Claim, (5-6)  To the extent that Cipriani claims that his grievances involved Buffardi, those contentions are misplaced.

First, however, grievances alone will not suffice to sustain a claim for personal involvement.  See Garrido v. Coughlin, 716 F. Supp. 98,  100 (S.D.N.Y.1989) (holding that Commissioner of DOCS not personally liable for ignoring plaintiff's letter of protest and request for an investigation).   Thus, even construing the second amended complaint in the light most favorable to Cipriani, any allegations of personal involvement by Buffardi still lack any factual basis.  Second, even assuming that a grievance was filed at SCCF on any of Cipriani's allegations, the grievance process at SCCF did not involve the Sheriff and a

grievance would not necessarily give notice to Buffardi of any deprivation.  Finally, Cipriani has proffered no evidence that Buffardi created a hiring or retention policy which allowed constitutional violations to continue or was grossly negligent in managing other defendants.

Accordingly, defendants' motions on this ground should be granted as to Buffardi.


### 2. Burns

Robert Burns ("Burns") was a Captain at the SCCF and denied Cipriani's appeal from the disciplinary conviction for fighting.  Burns Aff. ¶ 5.  Cipriani states that Burns was named as a defendant because he "basically wasn't sure who [he] was supposed to name as defendants . . . ."  Cipriani Dep. at 138-39.  There are no allegations that Burns was present at the time of the underlying altercation between Cirpriani and the other inmate or at the disciplinary hearing.  Thus, the only possible basis for his involvement is that his review of the disciplinary findings somehow deprived Cipriani of constitutional rights.  The record as to the documents reviewed by Burns is undisputed and, from those records, no question of fact has been raised to refute that Burns' decision was based on that record.  Cipriani has proffered no evidence that Burns' determination of his appeal was erroneous, let alone that it was made maliciously or wantonly.  Accordingly, defendants' motion on this ground should be granted as to Burns.


### 3. Other Individual Defendants

Viewing the facts in the light most favorable to Cipriani, the other individual defendants were directly involved in the various constitutional violations claimed.  William P.

19

Adams, a Sergeant at SCCF, was the hearing officer who presided over the disciplinary hearing where Cipriani claims to have been denied due process.  Second Am. Compl. IV, Fourth Claim, (7), (9).  Tanya Hull ("Hull"), a Correctional Officer, failed, to intervene to stop Trae from running down the stairs which led to Cipriani's injuries.  Id., IV, Second Claim, (5).  S. Jones failed to afford medical treatment to Cipriani when Cipriani's eye became infected.  Id., IV, (4).  Cipriani also alleges that Jones violated his First Amendment rights by failing to provide him with grievance forms despite numerous requests.  Cipriani Dep. at 140.  William Kent ("Kent"), a Corrections Officer at SCCF, allegedly refused to allow Cipriani to obtain medical treatment after his accident in the delivery truck.  Cipriani Dep. at 53-54.  Michael DiGicacchino ("DiGicacchino"), a Corrections Officer at SCCF, was allegedly failed to provide medical assistance to Cipriani while he was on a court visit, and again when a roll of toilet paper that he threw struck Cipriani and injured his eye.  Second Am. Compl., IV, Second Claim, (9); Id., IV, Third Claim, (2); Cipriani Dep. at 93-94; 97-98, 102-103.

As to each, Cipriani has proffered facts which, if proven, would suffice to establish personal involvement.  If credited, Cipriani's proof demonstrates that Adams failed to call witnesses requested by Cipriani at his disciplinary hearing; Hull was aware of the danger to Cipriani's health created by an inmate running on the stairs and failed to stop it; Jones, Kent, and DiGicacchino refused and delayed medical care for Cipriani, and Jones also refused to provide required grievance forms to Cipriani.  Accordingly, defendants' motions should be denied on these grounds as to these defendants.

### 4. Schenectady County

"A claim under § 1983 asserted against a municipality must allege that a deprivation

of the plaintiff's constitutional rights resulted from a custom or policy of the municipality."

Perez v. County of Westchester, 83 F. Supp. 2d 435, 438 (S.D.N.Y. 2000) (citing Monell v.

Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).  "Such a claim cannot be based on the

theory of respondeat superior [and] . . . there must be proof of such a custom or policy in

order to permit recovery on claims against individual . . . employees . . . ." Id. (citations

omitted).

Here, even construing the facts in the light most favorable to Cipriani, he has failed to

proffer facts which, if credited, would establish a custom or policy responsible for the

alleged deprivation of his constitutional rights.  This conclusion is corroborated by Cipriani's

testimony in which he made clear that he included the County of Schenectady as a

defendant solely on the theory of respondeat superior.  Cipriani Dep. at 171-72.

Accordingly, defendants' motions for summary judgment should be granted on this ground

as to Schenectady County.


### D. Inadequate Law Library

Cipriani makes a fleeting reference to defendants' failure to offer inmates use of an

adequate law library.  Second Am. Compl., IV, Fourth Claim, (10).[15]

The Supreme Court has held "that the fundamental constitutional right of access to

the courts requires prison authorities to assist inmates in the preparation and filing of

meaningful legal papers by providing prisoners with adequate law libraries . . . ." Bounds v.

Smith, 430 U.S. 817, 828 (1977); see also Lewis v. Casey, 518 U.S. 343, 351 (1996).  This

---

[15] Cipriani contends that the law library "d[id] not have a computerized data base [for reported] decis[]ions . . . ." Docket No. 145, Additional Facts ¶ 1.

21

right is not unlimited and "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program was subpar in some theoretical sense." Lewis, 518 U.S. at 531. Thus, in order to demonstrate an actionable injury, "a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury." Vega v. Artus, 610 F. Supp. 2d 185, 201 (N.D.N.Y. 2009) (citations omitted).

In this case, Cipriani has only made conclusory allegations that his access to a law library and legal assistance was insufficient.  Moreover, these allegations are belied by Cipriani's numerous filings with the Court.  The resources available to Cipriani at the SCCF were sufficient to facilitate (1) two amendments to Cipriani's complaint, (2) proper filings of motions to compel and for default judgment, and (3) adequate response and reply to defendants' current motion.  See Docket Nos. 10, 44, 50, 79, 95, 114, 126, 145, 152, 154, 157.  Thus, in the absence of any evidence that Cipriani suffered any actual injury precluding him from pursuing any judicial action and given his filings in this case. defendants' motion as to any claimed deficiency in the SCCF law library should be granted.

### E. Fourteenth Amendment

Cipriani asserts various of his claims under the Eighth Amendment which explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII. However, Cipriani was held at the SCCF as a pretrial detainee from February 2005 to February 2006 when he was transferred to state custody following his criminal conviction. Bernstein Aff. (Docket No. 133-2) at ¶ 8.  The Eighth Amendment protections apply to those who have been convicted of a crime, sentenced, and are thus suffering the "punishment"

22

contemplated by the Cruel and Unusual Punishment Clause.  Benjamin v. Fraser, 343 F.3d 35, 49-50 (2d Cir. 2003) (citing cases).  Claims concerning the conditions of confinement brought by a pretrial detainee, such as Cipriani here, must be analyzed under the Fourteenth Amendment Due Process Clause.  Id.

The standards under the Eighth and Fourteenth Amendments are not identical but are strikingly similar.  For example, the Eighth Amendment requires proof of both serious injury to the plaintiff and deliberate indifference to a known danger by the prison official.  See Farmer v. Brennan, 511 U.S. 825, 834-35 (1994).  The Fourteenth Amendment requires proof of actual or imminent harm to the plaintiff and deliberate indifference by the prison official.  See Benjamin, 343 F.3d at 50-51 & n.17; see also Shane v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being . . . [including] food, clothing, shelter, medical care, and reasonable safety . . . .").  Accordingly, cases analyzed under the Eighth Amendment may provide guidance in analyzing cases, as here, analyzed under the Fourteenth Amendment.

### 1. Medical Care

The Fourteenth Amendment prohibition extends to the provision of medical care.  Shane, 489 U.S. at 199-200.  The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious.  Farmer, 511 U.S. at 834; Benjamin, 343 F.3d at 51 n.17.  Second, the prisoner must show that the prison official demonstrated deliberate indifference by knowing of the risk and failing to take

measures to avoid the harm.  Id.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Id. at 844.

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)); see also Benjamin, 343 F.3d at 51 n.17. Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing Chance, 143 F.3d 698, 702 (2d Cir. 1998)).  The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case.  Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs."  Chance, 143 F.3d at 702.  Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate.  Chance, 143 F.3d at 703.  Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . .  are not adequate grounds for a section 1983 claim."  Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312

24

(S.D.N.Y. 2001).

With one exception, defendants do not challenge the whether Cipriani suffered a

serious injury but focus their arguments on the second element of deliberate indifference.

Docket No. 147 ¶¶ 9, 14, 16, 19.[16]   Thus, it will be assumed that questions of fact exist

regarding the first element of Cipriani's claims.


### A. April 6, 2005[17]

Directly after the accident, Cipriani was instructed to return to his cell to rest.  Cipriani

Dep. at 54.[18]   The following day, despite the pain that Cipriani claimed to be experiencing,

he went to work and attempted to perform light duty dishwashing.  Id. at 55-56.  When this

became too difficult, Cipriani returned to his cell where he was given medical attention.  Id.

---

[16] The single exception is that defendants contend that being hit in the eye with a roll of toilet paper did not produce a sufficiently serious injury.  Docket No. 147 ¶ 19.  However, viewing the facts in the light most favorable to Cipriani, his assertions of pain, blurry vision, and infection suffice to raise questions of fact as to whether he suffered a sufficiently serious medical need.  See Koehl v. Dalsheim, 85 F.3d 86, 88 (2d Cir. 1996) (holding that visual impairments such as double vision and the loss of depth perception constitute a serious medical need).

[17] Cipriani appears to allege that Kent's negligence in asking him to assist the delivery truck driver rises to the lever of a constitutional violation.  This contention must be rejected.  See generally Hendricks v. Coughlin, 942 F.2d 109, 113 (2d Cir. 1991) ("Proof of mere negligence will not give rise to a constitutional violation.  A plaintiff must demonstrate that defendants acted with deliberate indifference with respect to his safety or with an intent to cause harm to him . . . .") (citations omitted).  Cipriani's allegations, even liberally construed, do not assert claims of deliberate indifference to inmate health or safety.  Thus, his claims of mere negligence are not cognizable for § 1983 relief.

[18] It is difficult to quantify the objective pain that Cipriani suffered because he testified that he "shrugged [the pain] off" directly after the incident happened.  Cipriani Dep. at 32.  Cipriani's history as a construction worker accustomed him to "taking little thumps and bumps and stuff like that . . . ."  Id. at 54.

The following day, Cipriani underwent x-rays of his shoulder and hand with unremarkable results.  Med. Records at 11-12.  The record does not indicate that this two-day delay was done maliciously or intentionally.  Additionally, despite the negative findings in the diagnostic test, Cipriani was prescribed pain medication and was provided the pain medication consistently thereafter.  Id. at 10, 35-42, 47, 49-53, 59, 61, 81.  The coprovision of pain medication to ensure and increase comfort refutes any contention of delay or indifference.

Cipriani also received frequent medical follow-up appointments from defendants which indicated that by April 13, 2005, his shoulder retained a good range of motion and his left hand exhibited good grip strength although Cipriani still experienced pain.  Id. at 10.  Presumably to prevent further injury while these joints were healing, medical staff placed Cipriani on light duty work for the following week.  Id.  This behavior also belies deliberate indifference.  These findings were repeated on May 5, when treatment notes again reflect that Cipriani's left shoulder showed good range of motion, he was prescribed pain relievers, and he was shown exercises to improve his range of motion.  Id.  When Cipriani continued to complain of back pain three months later, he was provided a back sheet and pain medication.  Id. at 72.  Cipriani still contends that he still suffers back and shoulder pain.  Docket No. 152 ¶ 21.  A recent radiology test showed minimal degenerative changes in his back which were within normal limits for his age.  Docket No. 145-2 at 25.  The diagnostic testing confirms that defendants were intimately involved with Cipriani's care and did not delay or deny any treatment.

In addition to back, shoulder, and hand pain, the trauma to Cipriani's chest resulted in a lump that eventually required excision.  The lump was discovered on April 8, 2005.

Med. Records at 57.  It was promptly evaluated two days later.  Id.  Treatment notes indicate that it was evaluated again on April 18 and diagnosed as a probable lipoma.  Id. at 59.  The medical department advised Cipriani to alert them if there was pain or growth of the lump but that otherwise, it was not a concern.  Id.  To the extent that Cipriani contends that excision should have occurred sooner, this contention amounts to a difference of opinion over treatment and is insufficient to sustain a constitutional claim.  Sonds, 151 F. Supp. 2d at 312.

At the end of April and beginning of May, Cipriani requested treatment when the lump on his chest grew and became painful.  Med. Records at 61-63.  Additional pain medication was provided, although it was eventually deemed inadequate by Cipriani.  Id. at 62-63.  On May 3, Cipriani was again evaluated and the lump was categorized as a possible cyst with no signs or symptoms of infection.  Id. at 63.  The delay of approximately one week before evaluation is insufficient to constitute deliberate indifference.  Additionally, when Cipriani was evaluated, it was noted that the lump was not infected and thus did not pose an immediate danger.  Further, due to Cipriani's contentions that the lump was growing, he was immediately referred to a surgeon for excision.  Med. Records at 10, 29, 35.  Thus, there can be no question that defendants delayed or showed indifference to Cipriani's complaint.  To the extent that Cipriani contends that additional or quicker action should have been completed, it creates only a difference of opinion as to treatment and fails to establish a constitutional claim.  Sonds, 151 F. Supp. 2d at 312.

At the end of May, Cipriani was evaluated again and the lump was punctured in an attempt to drain it.  Med. Records at 66; Cipriani Dep. at 60; Docket No. 145-2 at 27.  This procedure further confirmed that the lump was probably a lipoma and that it should be

27

excised due to its enlargement and pain.  Docket No. 145-2 at 27.  This procedure

illustrates that defendants were careful to diagnose and treat the mysterious lump.

Throughout the next six weeks, Cipriani was scheduled to have the lump removed,

transported to a medical center, and then returned to the SCCF without undergoing the

procedure.  Cipriani Dep. at 60-61; Med. Records at 68.  The medical staff could not

answer Cipriani's question the surgery ha dnot been performed.  Med. Records at 68.

These actions, while unfortunate and even inconsiderate, amount at worst to negligence

and are insufficient to establish deliberate indifference.  Estelle, 429 U.S. at 105-06.  The

date for surgery was rescheduled for July 1, 2005.  Med. Records at 25.  On July 1, the

lipoma was successfully excised.  Id. at 30.  Cipriani received follow-up care.  Id. at 71.

Thus, on this record, Cipriani has failed to raise a question of fact to refute that he

received appropriate care for all the injuries he sustained in his accident on the delivery

truck.  Accordingly, defendants motions for summary judgment on this ground should be

granted.


### b. June 26, 2005

While climbing stairs, Cipriani fell down the stairs either because je was pushed by

another inmate or on his own accord.  Treatment notes indicated that after the fall, Cipriani

was alert, oriented, and independently moving all his limbs, head, and neck.  Med. Records

at 9.  Despite his objectively normal behavior, Cipriani was taken to the infirmary.  Id.  It was

noted that Cipriani was transported by wheelchair but moved with ease and little assistance.

Id.  The only noticeable injury was a small reddened area on his arm.  Id.  Cipriani was

given pain relievers and an examination was scheduled for the following day.  Id.  These

immediate actions subsequent to his fall indicate that defendants were neither deliberately indifferent nor intentionally delaying treatment.

Cipriani contends that he was abandoned and confined to his bed for at least three days without medical attention. Cipriani Dep. at 86. According to the medical records, however, Cipriani was seen by medical staff on June 28 and the only injuries noted were minor bruises. Med. Records at 69. Despite these inconsequential injuries, the medical staff still prescribed pain relievers to ensure Cipriani's comfort during his recovery. Id. Cipriani offers no evidence to contradict these records that he received reasonable treatment for minor injuries. Cipriani's contentions constitute no more than disagreement with the treatment he received.

Accordingly, defendants' motions for summary judgment on this ground should be granted.

### C. June 29, 2005

On June 29, 2005, Cipriani was taken to court for an appearance. Cipriani Dep. at 92. When he arrived, he was placed in a holding cell where he began experiencing immense pain and called for assistance. Second Am. Compl., IV, Second Claim, (9). Cipriani asserts that DiGioacchino declined to provide assistance. Id. However, these assertions are belied by Cipriani's medical records, which indicate both that he was suffering only from mild bruising and that he had already received pain medication that day. Med. Records at 42, 69, 97. Furthermore, Cipriani underwent surgery two days later and there were no subjective complaints of unbearable pain. Cipriani's assertions stand alone in contradiction to all other evidence, particularly as to the seriousness of his condition. A

party may not create an issue of fact simply by an unsupported statement, particularly

where it concerns a medical issue refuted by the medical evidence.  See Scott v. Harris,

127 S. Ct. 1769, 1776, (2007) ("When opposing parties tell two different stories, one of

which is blatantly contradicted by the record, so that no reasonable jury could believe it, a

court should not adopt that version of the facts for purposes of ruling on a motion for

summary judgment."); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445

(2d Cir.1980) (stating that a party opposing summary judgment "must bring to the district

court's attention some affirmative indication that his [or her] version of relevant events is not

fanciful")..

Accordingly, defendants' motions should be granted as to this claim.


### d. August 18, 2005[19]

_____

[19] To the extent that Cipriani alleges an excessive force claim against DiGioacchino,
it too must fail.  To bring a claim of excessive force, a pretrial detainee must establish both
objective and subjective elements.  Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999);
see also United States v. Walsh, 194 F.3d 37, 47-48 (2d Cir. 1999) (holding that an
excessive force claim by a pretrial detainee must be analyzed under the Fourth rather than
the Eighth Amendment but that the standards under the two amendments are identical).
The objective element is "responsive to contemporary standards of decency" and requires
a showing that "the injury actually inflicted is sufficiently serious to warrant [constitutional]
protection."  Hudson, 503 U.S. at 9 (internal citations omitted); Blyden, 186 F.3d at 262.
The subjective element requires a plaintiff to demonstrate the "necessary level of
culpability, shown by actions characterized by wantonness."  Sims, 230 F.3d at 21 (citation
omitted).  The wantonness inquiry "turns on 'whether force was applied in a good-faith
effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  Id.
(quoting Hudson, 503 U.S. at 7).  Cipriani's medical records belie any contention that the
injuries he sustained as a result of the toilet paper incident were sufficiently serious to
warrant constitutional protection.  See note 16, supra.  Additionally, nothing in the record
proves that this contact was undertaken maliciously or sadistically.  To the contrary,
Cipriani's testified that DiGioacchino delivered the toilet paper to inmates in a jovial
fashion, imitating a football quarterback throwing passes to the inmates.  Cipriani Dep. at
104-07.  Accordingly, defendants' motion as to this claim should be granted.

On August 18, 2005, Cipriani alleges that he was hit in the eye with a roll of toilet paper thrown at him by DiGioacchino.  Cipriani Dep. at 101; Med. Records at 75.   Cipriani contends that DiGioacchino refused to send him for treatment despite the fact that his eye was red, bloodshot, and excreting mucus.  Med. Records at 76-77.  These contentions are belied by the treatment notes from August 23, 2005 which indicate no signs of infection, no white matter in the eye, no tenderness, and no visible injury.  Id. at 76.  Despite the objectively benign medical findings, Cipriani was still prescribed antibiotic drops and referred to an opthamologist for evaluation.  Id. 27, 76.  A few weeks later, Cipriani was again evaluated and again found to have no signs or symptoms of infection.  Id. at 8.  On September 28, 2005, Cipriani again requested medical attention claiming that the drops were causing immense burning in his eyes.  Id. at 78.  Despite the burning, Cipriani noted that the drops were effective in resolving his pain and mucus excretions.  Id.  On August 30, 2005, Cipriani also received pain relievers.  Id. at 79.  Cipriani was again evaluated by an opthamologist on October 11, 2005.  Id. at 28.

Although the prescription was ultimately successful, Cipriani still contends that the dusty machines utilized by the optical department and the lack of expert specialization created an environment of deliberate indifference.  However, prisoners are entitled to "the minimum level of dental care required by the Constitution.  The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves . . . ."  Dean, 804 F.2d at 215 (citations omitted).  Therefore, Cipriani did not receive substandard care merely because the machinery may have been older than he would have preferred.  Additionally, disputes over whether a specialist is necessary are questions for the medical staff to answer, not for the inmate to demand.  Sonds, 151 F.

Supp. 2d at 312.

Cipriani also contends that Jones was deliberately indifferent to his care when she refused a medical appointment for lack of paperwork.  Cipriani Dep. at 111-12.  These claims are contradicted by Jones' testimony.  Jones Aff. ¶¶ 5-6.  Additionally, if Cipriani's claims were true, they would still be insufficient to allege a constitutional violation because SCCF policy required corrections officers to consult the log book before granting requests for medical treatment.  Elwell Aff. ¶ 10.  Thus, in the absence of an entry in the log book, it was required and reasonable for Jones not to send Cipriani immediately for treatment.  The controversy over the log book entry is irrelevant, however, because Cipriani received adequate and timely care only a few days after the alleged incident, regardless of any entries in the log book.[20]

Accordingly, defendants' motions should be granted as to this claim.


### E. December 6, 2005

On December 6, 2005, Cipriani was involved in an altercation with another inmate, Dingle.  Med. Records at 89; Cipriani Dep. at 120.  The fight left Cipriani with multiple contusions and lacerations.  Id. at 89.  On December 15, 2005, Cipriani requested treatment stating that his finger might be broken.  Id. at 90.  Treatment notes indicate that the finger was swollen and bruised.  Id.  Cipriani continued to complain about the finger a few weeks later and on January 5, 2006, was evaluated again.  Id. at 7, 33.  During the appointment, Cipriani was given pain relievers, declined a splint, and underwent x-rays.

---

[20] The log book is missing.

32

Id. at 7, 13, 14, 33.  These diagnostic procedures indicate that defendants were neither deliberately indifferent nor intentionally delaying Cipriani'is treatment.

The x-rays indicated that the finger had been broken, although it was impossible to determine when that had occurred.  Med. Records at 13, 14.  On January 10, 2006, the medical staff reported the x-ray results to Cipriani, who had no complaints of additional pain, and applied a splint to the finger.  Id. at 7, 33.  The splint was re-applied on January 22, 2006.  Id. at 94.  These actions indicate that a proper course of treatment was offered to Cipriani on January 5 and that he declined to consent to it.  Despite Cipriani's lack of cooperation, the medical department remained vigilant in diagnosing and treating the finger.  This is directly contrary to Cipriani's conclusory claims of medical indifference.

Accordingly, defendants' motions on this claim should be granted is granted.


## 2. Conditions of Confinement

As noted supra, claims concerning conditions of confinement asserted by a prisoner in pretrial detention as was Cipriani are analyzed under the Fourteenth Amendment Due Process Clause rather than under the Eighth Amendment, but the stands under the two provisions are nearly identical.  See subsection II)(E) supra..  "The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the" Constitution.  Farmer, 511 U.S. at 832.  A "plaintiff must satisfy both an objective . . . and subjective test."  Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted).  Thus, "[c]onditions of confinement only constitute a [constitutional] violation if they involve the deprivation of a single identifiable

human need or denial of the minimum civilized measure of life's necessities, and the

defendants' state of mind was one of deliberate indifference to that deprivation." <u>Johnson</u>

<u>v. Smith</u>, No. 9:03CV1050 (FJS/DEP), 2006 WL 1843292, at *9 (N.D.N.Y. June 29, 2006)

(Scullin, J.) (citations omitted).

> The objective prong can be satisfied by

>> conditions of confinement . . . [which] in combination [constitute a
>> violation] when each would not do so alone . . . [such as] when the
>> conditions have a mutually enforcing effect that produces the
>> deprivation of a single, identifiable human need such as food,
>> warmth, or exercise – for example, a low cell temperature at night
>> combined with a failure to issue blankets.

<u>Davidson v. Murray</u>, 371 F. Supp. 2d 361, 370 (W.D.N.Y. 2005) (citations omitted).

However, "[n]othing so amorphous as overall conditions can rise to the level of [a

cognizable violation] when no specific deprivation of a single human need exists." <u>Id.</u> (<u>citing</u>

<u>Wilson v. Seiter</u>, 501 U.S. 294, 304-05 (1991)).  The subjective prong requires "a prison

official [to] have a sufficiently culpable state of mind . . ., of deliberate indifference to inmate

health or safety" <u>Farmer</u>, 511 U.S. at 834 (citations omitted).

Cipriani claims that while he was in SHU, that section of the SCCF was flooded with

three inches of water and was dusty, and poorly ventilated.  Cipriani Dep. at 100, 108;

Docket No. 145, Additional Material Facts ¶ 15.  However, Cipriani had failed to show how

these conditions created any substantial risk of serious harm or denial of an identifiable

human need.  <u>See</u> <u>Davidson</u>, 371 F. Supp. 2d at 370.  Cipriani makes no contention how

the elevated water level inhibited his ability to eat, sleep, or reside at an adequate room

temperature.  Additionally, there are no claims of illness or injury.  At most, these are

conclusory allegations that are wholly insufficient to state a constitutional violation.  As

Cirpriani has failed to satisfy the objective prong of the analysis, summary judgment should be granted on that ground and the subjective prong need not be addressed.  However, even construing the facts in the light most favorable to Cipriani, there is no evidence that any of the defendants acted with deliberate indifference.

Accordingly, defendants' motions for summary judgment on this ground should be granted.


### 3. Failure to Protect

Cipriani further claims that Hull failed to protect him when another inmate bumped into Cipriani while running down a stairway causing Cipriani to fall down the stairs.  Because Cipriani was then a pretrial detainee, this claim must be analyzed under the Fourteenth Amendment Due Process Clause rather than under the Eighth Amendment.  Benjamin, 343 F.3d at 51 & m.18. In the context of a failure to protect claim asserted by a prison inmate, however, there is no substantial difference in the standards under the two amendments.  See Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir.2000).  Under both amendments, prison officials are obliged to protect prisoners from known harms.  Farmer, 511 U.S. at 829.  "The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Constitution." Id. at 832.  Where the inmate is alleging "a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  Id. at 834 (citing Helling v. McKinney, 509 U.S. 25, 31-32 (1993)).

A "plaintiff must satisfy both an objective . . . and subjective test."  Jolly, 76 F.3d at

480 (citations omitted).  In order to state a cognizable failure to protect claim, (1) "the

inmate [must be] incarcerated under conditions imposing a substantial risk of serious harm,"

and (2) the prison official must "know of and disregard an excessive risk to inmate health

and safety; the official must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must also draw the inference."

Matthews v. Armitage, 36 F. Supp. 2d 121, 124-25 (N.D.N.Y. 1999) (citing Farmer, 511 U.S.

at 834) (internal citations and quotation marks omitted).

     In this case, there is no evidence that Hull was aware that Cipriani was under an

excessive risk of harm.  There is no evidence that Hull knew or should have known that

Trae would be or was running on the stairs.  In fact, Cipriani was closer to Trae than was

Hull and Cipriani was unable to avoid impact with Trae.  In the absence of any evidence of

knowledge of the danger by Hull, no question of fact exists and Hull is entitled to judgment

on this claim.  This occurrence was an unfortunate accident, not a calculated attack which

Hull could have prevented.

     Therefore, defendants' motions for summary judgment on this claim should be

ground.


### 4. Due Process

     Cipriani claims that defendants denied him due process at his disciplinary hearing

and in refusing to permit him to file criminal charges against another inmate.[21]  As a

---

[21]As to this claim, defendant Adams denies that it ever occurred.  See Adams Aff.¶
3.  In any event, Cipriani fails to state a claim here because he had no constitutionally
protected right to file criminal charges against anyone.  See Langworthy v. Dean, 37 F.
Supp. 2d 417, 422 (D. Md. 1999) ("[A] right to compel the prosecution of criminal activity

threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life. Id. at 484; Davis v. Barrett, __ F.3d __, 2009 WL 2411811, at *3 (2d Cir. Aug. 7, 2009); Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996). The fact that an inmate has been disciplined with a SHU confinement alone is insufficient to establish an atypical and significant deprivation.

The Second Circuit has articulated a two-part test whereby the length of time a prisoner was held in SHU as well as "the conditions of the prisoner's confinement in SHU relative to the conditions of the general prison population" are to be considered. Davis, 2009 WL 2411811, at *3-4; Vasquez v. Coughlin, 2 F. Supp. 2d 255, 259 (N.D.N.Y.1998) (citing Brooks v. DiFasi, 112 F.3d 46, 49 (2d Cir.1997)). The Second Circuit has noted that where the period of confinement exceeds thirty days, "refined fact-finding" is required to resolve defendants' claims under Sandin. Colon v. Howard, 215 F.3d 227, 230 (2d Cir. 2000); see also Davis, 2009 WL 2411811), at *3-5 (finding questions of fact and insufficient record to grant defendants' summary judgment under Sandin where plaintiff spent sixty days in SHU). Thus, questions of fact exist as to the liberty interest asserted by Cipriani.

As to the merits of Cipriani's due process claim, inmates do not enjoy "the full

---

does not exist."). Defendants are thus entitled to judgment on this claim.

panoply of [due process] rights." Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  Prisoners

are "entitled to advance written notice . . . ; a hearing affording him a reasonable opportunity

to call witnesses and present documentary evidence; a fair and impartial hearing officer;

and a written statement of the disposition including the evidence relied upon and the

reasons for the disciplinary actions taken." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004)

(citations omitted).

        Cipriani's second amended complaint alleges that he was precluded from calling

additional witnesses during his hearings.  However, "[i]t is well settled that an official may

refuse to call witnesses as long as the refusal is justifiable [such as] . . . on the basis of

irrelevance or lack of necessity." Scott v. Kelly, 962 F.2d 145, 146-47 (2d Cir. 1992)

(internal quotation marks and citations omitted); see also Richardson, 833 F. Supp. at 152.

First, Cipriani's claims are belied by his testimony that he could not remember whether he

requested individuals to appear as witnesses and his signature on a document stating that

he declined to call any witnesses at his disciplinary hearing.  Cipriani Dep. at 128-30;

Adams Aff. ¶ 4; Docket No. 133-11 at 7.  Moreover, additional witnesses were not

necessary to determine whether Cipriani engaged in the inmate altercation because he

admitted that he fought.  Docket No.145 ¶¶ 30, 33, 38; Docket No. 145 ¶ 33.  This was

further confirmed by an eyewitness staff account.  Docket No. 133-11 at 8.  Therefore,

construing the facts in the light most favorable to Cipriani, there is no evidence to support

his conclusory allegations of a due process violation.

        Additionally, to the extent that Cipriani claims that he was unable to appeal Adams'

disciplinary decision, this too is without merit.  The record shows that Cipriani completed a

portion of the appeal form.  Cipriani Dep. at 131-32.  Moreover, Burns presided over the

appeal and upheld the decision.  Jones Aff. ¶ 5.  Thus, no basis appears in the record to

support Cipriani's claim.

Thus, defendants' motions as to this claim should be granted.


### 5. Failure to Provide Grievance Forms

Finally, Cipriani contends that defendants denied his right to due process when they

failed to provide him with the grievance forms necessary to file grievances at the SCCF

despite his repeated requests for the forms.  However, prison inmates have no

constitutional right of access to a grievance process.  See Jones v. North Carolina

Prisoners' Labor Union, Inc., 433 U.S. 119, 138 ("Notable in this respect are the grievance

procedures instituted by the Federal Bureau of Prisons . . . ; [h]owever, [there is no]

suggest[ion] that the procedures are constitutionally mandated."); see also Shell v.

Brzezniak, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005) ("[I]nmate grievance programs

created by state law are not required by the Constitution and consequently allegations that

prison officials violated those procedures do[] not give rise to a cognizable § 1983 claim.")

(citations omitted).  Additionally, while grievance programs are state-mandated procedures,

"there is no federal right to have state law properly administered."  Ramirez v. Holmes, 921

F. Supp. 204, 208 (S.D.N.Y. 1996).

Moreover, even if defendants denied Cipriani access to the grievance process, he

could still petition the courts for redress as he has done here.  See Shell, 365 F. Supp. 2d

at 370 ("If prison officials ignore a grievance that raises constitutional claims, an inmate can

directly petition the government for redress of that claim.") (citations omitted).  Thus,

Cipriani cannot demonstrate a cognizable right to participate in the SCCF grievance

39

process, without which he cannot establish this claim.

Accordingly, defendants' motions as to this claim should be granted.


**F. Qualified Immunity**

The individual defendants also contend that they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights of which a reasonable person would have known were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached concerning any of Cipriani's claims because, for the reasons discussed above, he has failed to raise a question of fact as to the first prong of the inquiry.

Accordingly, in the alternative, the individual defendants' motion on this ground

should be granted.


### III. Defendant Loraine Walker

A summons for service of process upon defendant Loraine Walker was issued on

April 2, 2007.  Docket No. 15.  Cipriani was granted in forma pauperis status, Docket No. 7,

and the United States Marshals Service attempted service upon Walker at the address

provided by Cipriani.  Docket No. 22.  However, the summons was returned unexecuted.

Id.  Cipriani has never provided the Marshals Service with any other address for Walker and

she has not otherwise appeared in this action.

Fed. R. Civ. P. 4(m) requires that a complaint be served upon a defendant within 120

days after the complaint is filed or the complaint may be dismissed as to any unserved

defendant without prejudice.  See also N.D.N.Y.L.R. 4.1(b). The original complaint naming

Walker as a defendant here was filed on July 21, 2006 (Docket No. 1).  More than 120 days

have passed since either the complaint was filed or the summons for Walker was issued.

Accordingly, it is recommended that the action be dismissed as to defendant Walker without

prejudice pursuant to Rule 4(m) and Local Rule 4.1(b).


### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants'

motions for summary judgment (Docket Nos. 133, 140) be **GRANTED** as to all claims and

all defendants except Walker and that judgment be entered in favor of all defendants

except Walker on all claims; and

**IT IS FURTHER RECOMMENDED** that the action be **DISMISSED** without prejudice as to Walker.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  August 12, 2009
      Albany, New York

United States Magistrate Judge